NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2026 VT 27

No. 25-AP-256

| | |
|---|---|
| Human Rights Commission | Supreme Court |
| | On Appeal from |
| v. | Superior Court, Washington Unit, Civil Division |
| Homer Durkee | March Term, 2026 |

Timothy B. Tomasi, J.

Mitchell J. Rotbert, Senior Counsel, Vermont Human Rights Commission, Montpelier, for
 Plaintiff-Appellant.

Robert J. Kaplan of Kaplan and Kaplan, Burlington, for Defendants-Appellees Heather Prive and
 Tina Lamos.


PRESENT: Reiber, C.J., Eaton, Waples, Nolan and Drescher, JJ.


¶ 1.    **WAPLES, J.**    Plaintiff Vermont Human Rights Commission (HRC) appeals the trial court's denial of its motion to substitute parties under Vermont Rule of Civil Procedure 25. Below, plaintiff filed a complaint alleging that defendant Homer Durkee violated the Vermont Fair Housing and Public Accommodations Act (VFHPAA) while leasing a rental property unit. After defendant died, plaintiff sought to substitute his four adult children, who now own the rental property, and his wife's estate. The court denied the motion and dismissed the case. On appeal, plaintiff argues the court misapplied Rule 25 and urges this Court to substitute the proposed parties as distributees of defendant's estate. We affirm the trial court's decision.

¶ 2.    The following facts are drawn from the record and the parties' allegations in their filings below. In January 2021, defendant leased a rental property unit in Enosburg Falls, Vermont,

to Susan Demar. Later that year, Demar filed an unfair housing complaint with plaintiff, and in December 2021, she moved out of the unit. In April 2023, plaintiff filed a complaint on behalf of Demar against defendant, alleging that he engaged in unfair housing practices and discriminated against her as her residential landlord in violation of the VFHPAA. See 9 V.S.A. §§ 4500-4507; see also id. § 4506(c) (permitting HRC to bring unlawful-discrimination claim). Plaintiff's complaint sought declaratory, injunctive, punitive, and compensatory relief.

¶ 3. In August 2023, defendant died. Subsequently, defendant's wife executed an enhanced life-estate deed, naming her and defendant's four children as beneficiaries to receive title to the rental property where the alleged discrimination occurred upon her death. Defendant's wife then died. At no time was she named a defendant in this case.

¶ 4. In February 2025, defendant's attorney filed a notice of defendant's death with the court. The notice indicated that plaintiff was advised of defendant's death in October 2023. The notice also provided that when defendant died, he owned no individual assets; in other words, all of defendant's property, including the rental property, were marital assets owned jointly by defendant and his wife. It stated that since defendant's death, an estate has not been opened in his name.

¶ 5. Plaintiff filed the motion that is the basis of this appeal, seeking to substitute the four children and the estate of defendant's wife under Rule 25(a) and (c).[1] The motion expressed plaintiff's intent to amend the complaint following substitution to impose personal liability on the proposed parties for their transfer of the rental property, which plaintiff asserted violated the VFHPAA.

¶ 6. In April 2025, the trial court denied plaintiff's motion to substitute. It reasoned that, if the claim survived defendant's death, the proper substitute for a decedent under Rule 25(a) was the decedent's estate, which allowed the action against the decedent to continue. However,

---

[1] Plaintiff filed other motions that are not in issue on appeal and not addressed in this decision.

2

plaintiff proposed to substitute individuals unrelated to the original complaint and asserted different claims against them. Because no proper defendant appeared in the case, and because plaintiff could not use substitution to convert the case into a different action, the trial court denied the motion to substitute—and all other pending motions—without prejudice. The court instructed it would give plaintiff thirty days to file additional pleadings to ensure the case proceeded against a proper defendant, after which it would dismiss the case without prejudice. Plaintiff did not file anything to maintain the action, and the court dismissed the matter without prejudice in June 2025. Plaintiff appealed.

¶ 7. On appeal, plaintiff argues the trial court misunderstood its motion and misapplied Rule 25. First, plaintiff asserts that its motion was intended solely to substitute the proposed parties for defendant; although plaintiff intended to impose personal liability on them following substitution, the court erroneously combined its two ultimate aims. Plaintiff maintains that Rule 25 permits its requested substitution because the proposed parties are defendant's distributees. Second, plaintiff argues that nothing in the Vermont Rules of Civil Procedure prevents it from seeking to separately impose personal liability on parties following substitution.

¶ 8. As explained below, we conclude the trial court did not err in denying plaintiff's motion to substitute and affirm. We therefore do not reach plaintiff's argument regarding its ability to impose personal liability following substitution.

¶ 9. We first consider plaintiff's argument that the proposed parties may be substituted under Rule 25. We review plaintiff's interpretation of Rule 25, a procedural rule, de novo. State v. MacFarland, 2021 VT 87, ¶ 13, 216 Vt. 126, 275 A.3d 110 (explaining because "[p]rocedural rules have statutory force," interpretation of procedural rules is "question of law which we review de novo" (quotations omitted)). "In construing a procedural rule, we look first to the rule's plain language, just as with statutory construction." State v. Villar, 2017 VT 109, ¶ 7, 206 Vt. 236, 180 A.3d 588.

3

¶ 10. Rule 25(a), which governs substitution of parties on death, states in relevant part: "If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties." V.R.C.P. 25(a). The plain language of Rule 25 requires that (1) the claim survives the original party's death, and that (2) any substitutes are "proper parties."

¶ 11. Our decision in State v. Therrien, 161 Vt. 26, 633 A.2d 272 (1993), guides our analysis of both Rule 25(a) elements. There, the State charged the defendant with violating Act 250 and the Consumer Fraud Act in connection with a residential development. See 10 V.S.A. §§ 6001-6111; 9 V.S.A. §§ 2451-2462. The defendant died before the court issued its findings and judgment. Following his death, the court substituted as parties both the defendant's estate and, after his estate was opened, the defendant's wife. The wife appealed, arguing that the State's claims did not survive the defendant's death and that the court erroneously substituted her as a party and imposed personal liability on her. Therrien, 161 Vt. at 29, 633 A.2d at 274.

¶ 12. In assessing whether the State's claims survived, we considered the statutes providing for the survival of specific actions and observed that those statutes did not include Act 250 and the Consumer Fraud Act. Id. at 30, 633 A.2d at 274-75; see 14 V.S.A. §§ 1451-1453 (listing survival of causes arising out of injury to personal or real property and personal injuries and permitting such actions to be prosecuted by or against executor or administrator of estate). However, we reasoned that strict adherence to those statutes, which were adopted in the early nineteenth century, would preclude the survival of all claims created since then. Therrien, 161 Vt. at 30, 633 A.2d at 274-75. Because the survival statutes, if read literally, would conflict with the remedial purposes of Act 250 and the Consumer Fraud Act, we concluded that "[w]e must apply remedial legislation liberally to accomplish its purposes." Id. at 31, 633 A.2d at 275. We held that "unless the Legislature says otherwise, we will presume that it intended that actions pursued under the remedial terms of protective legislation survive the death of the wrongdoer in order to remedy the injustices done." Id. at 32, 633 A.2d at 276. Because both Act 250 and the Consumer

4

Fraud Act are remedial laws, the claims against the defendant survived his death, even if no statute explicitly provided so. Id.

¶ 13.    We also concluded that the defendant's wife was properly substituted. Id. at 29, 633 A.2d at 274. We explained that "under either [14 V.S.A.] § 1401 or § 1417, [the wife] in her capacity as executrix was a proper party for substitution. Similarly, under § 1417, [the wife] in her capacity as devisee (distributee) was a proper party for substitution." Id. We clarified that the wife "was not substituted as a party in her own right" but as a stand-in for the defendant's estate. Id. at 33, 633 A.2d at 276. Accordingly, she was liable "only by and through her connection to the estate of [the defendant] and only to the extent of the assets in that estate" such that if "estate assets [were] insufficient to fund the remedial actions ordered, [she] [would] have no personal responsibility to pay for those actions." Id. In other words, no personal liability was imposed on the wife.

¶ 14.    With this understanding, we now turn to the instant case. The parties do not dispute that plaintiff's claim survives defendant's death under the reasoning set forth in Therrien. In a recent amendment, the Legislature added a provision expressly indicating that the VFHPAA is remedial legislation. 2021, No. 182 (Adj. Sess.), § 19. The act states: "The provisions of this chapter shall be construed liberally to accomplish its remedial purposes, and any exceptions and exemptions to the provisions of this chapter shall be construed narrowly in order to maximize the deterrence of discriminatory behavior." 9 V.S.A. § 4500(c)[2]; see Maple Run Unified Sch. Dist. v.

---

[2] As recognized in State v. Eaton, "[w]e must presume that the Legislature made changes in the law in light of the relevant decisions of this Court and with knowledge of prior legislation on the same subject." 2026 VT 14, ¶ 23, __ Vt. __, __ A.3d __ (quotation omitted). "Where the Legislature has an opportunity to amend a statute in response to judicial interpretation but does not do so, its inaction indicates that the judicial interpretation is consistent with legislative intent." Id. Here, the Legislature has not only left the survival statutes intact but also has added a provision indicating the VFHPAA's remedial purposes.

We do not "lightly overturn recent precedent," and "[c]onsiderations of stare decisis have special force in the area of statutory interpretation, for here . . . the legislative power is implicated, and [the Legislature] remains free to alter what we have done." Id. ¶ 16 (quotations omitted); see

Vt. Hum. Rts. Comm'n, 2023 VT 63, ¶ 13, 218 Vt. 496, 311 A.3d 139 (providing 9 V.S.A. § 4500 is "remedial statute" that "must be liberally construed in order to suppress the evil and advance the remedy intended by the Legislature" (quotation omitted)). Therefore, plaintiff's claims against defendant survive his death. See Therrien, 161 Vt. at 32, 633 A.2d at 276 (holding remedial legislation survives death unless Legislature says otherwise).

¶ 15. The primary question is whether the proposed parties are "proper parties" for substitution. Sections 1401 and 1417 of Title 14 establish the pool of potential "proper parties" who may be substituted under Rule 25. See id. at 29-30, 633 A.2d at 274 (assessing both statutes and explaining § 1417 "specifies a proper procedure if a claim against the decedent otherwise survives"). Section 1401 provides that "[a]n executor or administrator may commence, prosecute, or defend, in the right of the deceased, actions that survive to the executor or administrator." 14 V.S.A. § 1401. Section 1417 states that "[a] person having a contingent or other claim against a deceased person may prosecute the claim against the executor, administrator, heirs, devisees, or

_____

id. ¶¶ 22-23 (declining to overrule decisions issued in 1995 and 1997 and describing it as "significant that in the thirty years since [those cases] were decided, the Legislature has taken no action to overrule or alter our interpretation of" statute at-hand). This principle applies with equal force to Therrien, which was decided in 1993 and which the Legislature has since taken no action to contravene.

The concurrence relies on Reynolds v. State, 2025 VT 34, __ Vt. __, 342 A.3d 904, which concerns the Vermont Innocence Protection Act (VIPA). Post, ¶¶ 33-34. There, the plaintiff sought damages under VIPA due to his wrongful imprisonment. It was unnecessary for the Court to rely on common-law grounds for survival because the facts and holding of another case, Administrator of Whitcomb v. Cook, 38 Vt. 477 (1866), were directly on point. In Whitcomb, we held that wrongful imprisonment was equivalent to bodily injury and therefore, fell within the survival statute. Whitcomb, 38 Vt. at 481-82; see Reynolds, 2025 VT 34, ¶¶ 8-9 (summarizing Whitcomb). However, neither Reynolds nor the survival statutes, 14 V.S.A. §§ 1451-1453, preclude other grounds upon which claims may survive. Reynolds, 2025 VT 34, ¶¶ 9-10 (stating "our interpretation in Whitcomb controls our understanding of the extent of survivorship in this context" (emphasis added)); 14 V.S.A. § 1451 (listing actions that survive, including "actions that survive by common law"). The contexts of Reynolds and the instant case diverge, evinced through their distinct facts as well as the Reynolds Court's express narrow construal of VIPA's provisions. See Reynolds, 2025 VT 34, ¶¶ 18-20. To construe VFHPAA narrowly would contradict the statute's own terms.

legatees." Id. § 1417. Collectively, these statutes establish that an executor, administrator, heir, devisee, or legatee may be substituted under Rule 25.

¶ 16. Plaintiff has failed to establish that the proposed parties are "proper parties" for substitution under either § 1401 or § 1417. Plaintiff provided no information about whether defendant left a will, so we cannot conclude that the proposed parties are executors, devisees, or legatees. See Executor, Black's Law Dictionary (12th ed. 2024) (defining executor as "person named by a testator to carry out the provisions in the testator's will"); Devisee, id. (defining devisee as "recipient of property by will"); Legatee, id. (defining legatee as "[s]omeone who is named in a will to take personal property"); see also 9 V.S.A. § 4351(2) (defining "devisee" as "any person designated in a will" to receive real or personal property); 14 V.S.A. § 10 (providing "[a]ny beneficial devise or legacy made or given in a will" requires subscribing witnesses to will). Plaintiff also has not demonstrated that the proposed parties are administrators of defendant's assets. See Administrator, Black's Law Dictionary, supra (defining administrator as "person appointed by the court to manage the assets and liabilities of an intestate decedent").

¶ 17. We likewise cannot conclude the proposed parties are heirs. The survival statutes do not define the term, but Vermont law elsewhere defines "heirs" as "those persons, including the surviving spouse, who are entitled under the statutes of intestate succession to the property of a decedent." 9 V.S.A. § 4351(3); see also Heir, Black's Law Dictionary, supra (defining heir as "[s]omeone who, under the laws of intestacy, is entitled to receive an intestate decedent's property").[3] The statutes of intestate succession, 14 V.S.A. §§ 301-338, direct the distribution of a person's estate when that person dies without a will. "Any part of a decedent's estate not effectively disposed of by will passes by intestate succession to the decedent's heirs." 14 V.S.A.

_____

[3] Black's Law Dictionary alternatively defines "heir" as "a person who inherits real or personal property, whether by will or by intestate succession; esp., by abstract designation, someone who serves merely to determine the quantity of an estate given by will." Heir, Black's Law Dictionary, supra. Plaintiff's proposed parties do not qualify as "heirs" under this definition because, as mentioned above, plaintiff has not demonstrated that defendant left a will.

§ 301; see Fletcher v. Ferry, 2007 VT 8, ¶ 8, 181 Vt. 294, 917 A.2d 937 ("An heir's rights and title to property do not originate in the decree of distribution but are derived from the decedent . . . under the statute of distribution." (quotation omitted)).

¶ 18. Here, plaintiff has not shown that the proposed parties qualify as heirs because it has not provided any information about whether defendant had assets that would pass directly from him to them through the statutes of intestate succession. The sole asset plaintiff identified is the rental property. Plaintiff has not presented evidence refuting the proposed parties' statement that defendant jointly owned the rental property with his wife as tenants by the entirety; moreover, plaintiff itself characterizes the rental property as a jointly owned asset. Because marital assets held in tenancy by the entirety pass by operation of law to the surviving spouse, the rental property would have passed at defendant's death to his wife by operation of law and not under the statutes of intestate succession. See Tenancy, Black's Law Dictionary, supra (providing that in tenancy by entireties, when one spouse dies, surviving spouse automatically retains entire interest); Kennedy v. Rutter, 110 Vt. 332, 340, 6 A.2d 17, 21 (1939) (explaining tenants by entirety "have but one title and each owns the whole," and surviving spouse takes whole property). Plaintiff has presented no further information about the rental property or any of defendant's other assets—and whether those assets were individually held such that they would constitute his estate and pass by intestate succession. Plaintiff has also presented no evidence against the assertion that an estate has not been opened in defendant's name. Plaintiff has not shown that the proposed parties are heirs within the meaning of 14 V.S.A. § 1417.[4]

¶ 19. Plaintiff contends that the proposed parties may be substituted as defendant's distributees because they ultimately received the rental property and may be held accountable "to

---

[4] Plaintiff argues that even if the rental property was held by defendant and his wife as tenants by the entirety, once defendant died, the marital property was no longer protected from defendant's creditors. This argument does not affect our conclusion, which depends on how defendant's property passed to the proposed parties, not whether the property is protected from creditors.

the extent of their receipt of his assets." Plaintiff asserts that its position is consistent with precedent because Therrien and federal cases applying Rule 25's federal counterpart have used the term "distributee."

¶ 20. We disagree. First, Therrien used "distributee" in a narrow sense to refer to a devisee who received property from a decedent's estate. See Therrien, 161 Vt. at 29, 33 n.4, 633 A.2d at 274, 276 n.4 (substituting wife "as devisee (distributee)" because she was devisee who had received her share of husband's estate pursuant to his will); see also id. at 29, 633 A.2d at 274 (citing federal case, McSurely v. McClellan, 753 F.2d 88 (D.C. Cir. 1985), where district court substituted widows who had been distributed assets of their husbands' estates pursuant to their husbands' wills). It did not create a new category of potential substitute parties, as plaintiff claims.

¶ 21. Second, the federal cases plaintiff cites used "distributee" exclusively in the context of a distributed estate. See Graham v. Henderson, 224 F.R.D. 59, 64-65 (N.D.N.Y. 2004) (holding wife of one deceased defendant who was primary distributee of his distributed estate was proper party for substitution, but wife of other deceased defendant, where court was unsure if her husband had estate and could not determine if she was distributee of such estate, if it existed, was not proper party for substitution); In re Baycol Prods. Litig., 616 F.3d 778, 781-82 (8th Cir. 2010) (remanding case because district court erroneously relied on state procedural rule in dismissing motion to substitute daughters, who allegedly were sole heirs and sole distributees of their deceased intestate mother's estate); Sinito v. U.S. Dep't of Just., 176 F.3d 512, 513, 516 (concluding cause of action survived and remanding case for district court to determine whether deceased plaintiff's son was proper party for substitution because "distributee of a decedent's estate . . . of an estate that has been distributed" may be proper party). Neither Therrien's nor the cited federal cases' use of "distributee" applies here, where there is no indication that defendant's children or wife received

9

assets from defendant's estate, if one existed, either by will or intestate succession.[5]  We reject plaintiff's broad formulation of "distributee" as any person who receives property that once belonged to a deceased defendant.

¶ 22.    Plaintiff's assertion that the proposed parties may be held accountable "to the extent of their receipt of [defendant's] assets" to vindicate undeserved profits misconstrues Therrien.  In Therrien, we held the substitution order made the defendant's wife liable "only by and through her connection to the estate of [the defendant] and only to the extent of the assets in that estate"—not to the extent of her receipt of his assets, as plaintiff alleges.  Therrien, 161 Vt. at 33, 633 A.2d at 276 (emphasis added).  The wife was not held personally liable and was merely a stand-in for her husband's estate; her receipt of any assets not pertaining to the defendant's estate was irrelevant.[6] We agree that here, defendant's estate, if one exists, may be held liable to the extent of its assets. However, as discussed above, there is no evidence that defendant has an estate that the proposed parties can stand in for.

¶ 23.    Finally, plaintiff states Rule 25(c) supports its argument that a distributee may be substituted without further explanation.  Rule 25(c), which is labeled "Transfer of Interest,"

_____

[5]  Although we address plaintiff's cited federal cases and conclude they do not support its broad interpretation, we note that state law determines who constitutes a proper party, and none of the cited federal cases interpret Vermont law.  In re Baycol Prods. Litig., 616 F.3d 778, 787-88 (8th Cir. 2010) (clarifying "[t]he question of who is a proper party is a substantive issue, for which we must rely upon state law").  Neither Therrien nor our decision in this case permits actions to survive and be prosecuted against anyone who receives anything from the deceased.  See supra, ¶ 20.

[6]  Although the concurrence emphasizes the purported unfairness of substituting parties who "have [not] done anything wrong," even as stand-ins for a deceased person's estate, post, ¶ 26, we reiterate the distinction between whether a claim survives and who may be substituted as a proper party.  Overturning Therrien's holding on claim survival would not change the fact that the Legislature has expressly provided the parties it deems proper for such substitution regardless of their personal faults.  See 14 V.S.A. §§ 1401, 1417.  This Court will not replace or substitute its judgment for that of the Legislature.  See State v. Ludlow Supermarkets, Inc., 141 Vt. 261, 267, 448 A.2d 791, 794-95 (1982) (stating state courts "have a duty of judicial restraint," encompassing "deference to legislative exercise of the sovereign power allocated to that body by the state constitution" and "presumption that the legislative action is taken in good faith, and in accordance with constitutional standards").

10

provides: "In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party." Rule 25(c) does not apply to the instant case because there is no evidence that defendant transferred his interest in his property to anyone while the case was pending. See, e.g., Ditech Fin. LLC v. Brisson, 2025 VT 54, ¶¶ 6-7, __ Vt. __, 350 A.3d 366 (describing assignments of mortgage as transfers of interest and applying Rule 25(c)); cf. id. ¶ 16 (explaining Rule 25(c) governs "to the extent a transfer occurred during the pendency of the proceedings"). While defendant's wife transferred her interest in the rental property, plaintiff brought its complaint against defendant, and his wife was not named a defendant in this case.

¶ 24. Because plaintiff has not demonstrated the proposed parties are "proper parties" for substitution under Rule 25, we do not reach plaintiff's argument that it may impose personal liability on them following substitution.

Affirmed.

FOR THE COURT:

_____
Associate Justice

¶ 25. **NOLAN, J., concurring.** In my view, it is unnecessary to decide whether the children of deceased defendant Homer Durkee were proper substitute parties under Vermont Rule of Civil Procedure 25.[7] Defendant's death extinguished plaintiff Vermont Human Rights Commission's cause of action alleging that he violated the Vermont Fair Housing and Public Accommodations Act (VFHPAA); this obviates the need to answer any question about the proper

_____

[7] Plaintiff sought to add the four children and the estate of defendant's wife. Because it is not clear to me that she ever had an estate, and for ease, I will refer to the four children as the putative substitute parties. The existence of an estate for defendant's wife would not change my analysis or conclusions.

11

substitute party. Rule 25 calls upon courts to analyze the question of substitution of parties only "[i]f a party dies and the claim is not thereby extinguished" under the common-law rule of abatement. The Legislature has enacted and reenacted survival statutes that carve out exceptions to that rule. 14 V.S.A. §§ 1451-1453. These statutes name the causes of action that survive the death of a defendant and the types of parties that can be substituted. Plaintiff's action under the VFHPAA is not one of the listed causes of action, and it is not analogous or otherwise akin to them. Indeed, although litigants in past cases have made the argument successfully, plaintiff did not argue at any point in this litigation that its VFHPAA action should be treated as one of the causes of action listed in the survival statutes. See Reynolds v. State, 2025 VT 34, ¶ 10, __ Vt. __, 342 A.3d 904 (concluding plaintiff's complaint for damages under Vermont Innocence Protection Act (VIPA) survived plaintiff's death because it was analogous to claim for bodily injury); Adm'r of Whitcomb v. Cook, 38 Vt. 477, 483 (1866) (holding wrongful-imprisonment claim survived death because it was analogous to claim for bodily injury). While I agree that if we follow the logic of State v. Therrien, 161 Vt. 26, 633 A.2d 272 (1993), this action survives due to the remedial nature of the VFHPAA, I would hold that Therrien was wrongly decided and affirm on grounds that defendant's death extinguished plaintiff's lawsuit. See Larkin v. City of Burlington, 172 Vt. 566, 568, 772 A.2d 553, 556 (2001) (mem.) ("[W]e will not reverse the trial court's underlying decision if the record before us reveals any legal grounds that would justify the result."). I therefore respectfully concur in the result, but not the reasoning, of the majority opinion.

¶ 26. Therrien adopted a legal framework that will facilitate the potential substitution of anyone (such as the children in this case) who inherits anything directly from a deceased person who is alleged to have contravened a remedial statute (such as the rental property in this case, had it passed directly to the children by will or succession statute), even though, as here, the property recipient did nothing wrong and is not alleged to have done anything wrong. In this case, plaintiff's

attempt at substitution of the children fails because defendant had no estate. But under the logic of <u>Therrien</u>, had any of the children received the rental property or anything else of value through an estate of their father's—as opposed to it having passed to their mother first—they would have been added to this antidiscrimination lawsuit arising from events alleged to have occurred five years ago, even though they are not accused of any wrongdoing. Inevitably, the next deceased alleged wrongdoer will leave a will or pass assets through the intestate succession statutes, and, if we continue to follow <u>Therrien</u>, the property recipient who has not been accused of any transgression will be drawn into a lawsuit only by virtue of having received something, anything, from the deceased. Rather than attempt to apply the decision in this fashion, I would hold that <u>Therrien</u> was wrongly decided and adhere instead to Vermont's statutory scheme and related precedent for determining which civil actions may survive the death of a defendant and against whom they may be prosecuted. I respectfully concur because I would affirm on the basis that when defendant died, he stopped being a legal person capable of being sued under the VFHPAA and that plaintiff's action therefore expired upon his death.

¶ 27. It is important to keep in mind the sequence of events leading up to the trial court's decision denying plaintiff's motion to substitute parties under Rule 25.[8] Plaintiff sued on behalf of a tenant who alleged that defendant discriminated against her in 2021 while she lived at a rental property he owned jointly with his wife. Defendant denied the allegations, and no judgment or finding ever entered against him. He passed away in August 2023; there is no evidence that an estate was opened in his name. Upon his death, his wife allegedly became sole owner of the rental property. She later executed an enhanced life estate deed, naming her and defendant's four children as beneficiaries to receive title to the rental property upon her death. Defendant's wife,

---

[8] In reaching that decision, the trial court declined to entertain the second question under Rule 25: whether the children were proper substitute parties. It believed that plaintiff was not truly seeking to substitute the children for their father, but attempting to assert entirely new claims against the children under the auspices of substituting them as parties under Rule 25.

who was not named as a defendant in this case, then died. The record does not reveal whether she had an estate. Neither defendant's deceased wife nor his children are identified as having committed any wrongdoing in connection with plaintiff's lawsuit.

¶ 28.    As the majority correctly notes, "[t]he parties do not dispute that plaintiff's claim survives defendant's death under the reasoning set forth in Therrien." Ante, ¶ 14.[9]  I agree, and I also agree that the reasoning of Therrien would keep this action alive, where it would not otherwise survive under the language of the survival statutes and our precedent.  In other words, if this action survives defendant's death, it is only because of Therrien, which held that actions brought under any remedial statute (presumably those in existence and those yet to be enacted) survive the death of the defendant even though the remedial statute may have no survival provision and the action is not identified in Vermont's survival statutes as surviving a defendant's death.  161 Vt. at 32, 633 A.2d at 276.  This begs the question of whether Therrien withstands scrutiny today.

¶ 29.    I would overrule Therrien because its sweeping holding that all actions brought under any remedial statute survive the death of the defendant—and can be prosecuted against anyone who may be considered a "distributee" of the deceased—is without foundation in the survival statutes or our cases interpreting them. Id.  The impetus for the decision was a desire to protect modern statutory causes of action from common-law abatement and to eliminate "injustices done." Id.  In my view, however, the decision risked creating other forms of injustice—such as the addition of new categories of innocent parties to lawsuits having nothing to do with them.  As to Therrien's stated goal, the Legislature can add survival provisions to modern statutes at any

_____

[9]  The parties do, however, disagree about the workability and wisdom of Therrien.  The first issue plaintiff identified is whether this action survives under Therrien, and plaintiff argued that it should survive.  In response, the putative substitute parties appeared to concede that Therrien's reasoning dictates survival of this action in some form or fashion.  But they also criticized the decision for a variety of reasons, including for its "practical effect" of creating an "overly expansive universe of potential substituted parties."

time.[10] Moreover, over two centuries, this Court has broadly defined the causes of action listed in

the survival statutes so that they may encompass analogous modern statutory causes of action and

---

[10] While it is true that our cases have considered legislative inaction during statutory interpretation, ante, ¶ 14 n.3, this analysis has been context-driven, with this Court's assessment of the import of legislative inaction depending, as it must, upon the unique factual setting of each case. Compare State v. Eaton, 2026 VT 14, ¶ 22, __ Vt. __, __ A.3d __ (finding legislative inaction since prior decisions significant, particularly since Legislature had amended affected statute nine times in intervening years), and Town of Killington v. State, 172 Vt. 182, 194, 776 A.2d 395, 404 (2001) (accepting as evidence of legislative intent official contemporaneous letter from legislative committee explicitly established by Legislature to implement statute being construed and to oversee rules and policies of agencies and school districts governed by statute), with Lake Bomoseen Ass'n v. Vt. Water Res. Bd., 2005 VT 79, ¶ 21, 178 Vt. 375, 886 A.2d 355 ("Although some courts have held that legislative inaction following a contemporaneous interpretation is evidence of that legislature's intent to adopt the interpretation, '[t]he acquiescence of the legislature seems to be of small consequence where the statute or its contemporaneous interpretation was not called to the legislature's attention.' " (quoting 2B N. Singer, Sutherland on Statutes and Statutory Construction § 49:10, at 112-14, 117 (6th ed. 2000))). Indeed, in Lake Bomoseen, we approvingly quoted commentary stating that "[l]egislative inaction has been called a 'weak reed upon which to lean' and a 'poor beacon to follow' in construing a statute." Id. Notably, our recent decision in Eaton properly paired its consideration of legislative inaction with consideration of the "plain language of the statute" under review in declining the defendant's invitation to overrule previous precedent. 2026 VT 14, ¶ 23. As discussed later, Therrien did not analyze the plain language of the survival statutes or of Act 250 and the Consumer Fraud Act, the remedial statutes at issue in the case. Nor could the decision have done so by its own terms because it announced a new rule for all remedial actions under any statute in existence or yet to be enacted. This readily distinguishes Therrien from our legislative inaction analysis in Eaton, which honored the text of the statute while weighing the significance of legislative inaction on the unique facts before it. We may continue to consider legislative action without also reading significant substantive provisions into statutes based on bare presumption. See Lake Bomoseen Ass'n, 2005 VT 79, ¶ 22 (distinguishing Killington, which involved evidence of legislative intent in form of official contemporaneous letter from legislative committee, from approach that would "presume legislative acquiescence simply because the administrative rules committee did not object to a single sentence in the wetland rules stating that review of the [Water Resources Board's] decisions regarding wetland reclassification petitions").

It is also true that the Legislature has recently amended the VFHPAA to clarify that it is remedial in nature. The statute, however, remains silent on survival after the death of a defendant. I do not believe that we may read a survival provision into the statute based both upon legislative inaction and legislative action, particularly not where, as here, the required presumption is so significant. See id. Moreover, if the Legislature wanted to enact something so important and specific as a survival provision, it stands to reason that it would have been more explicit and not relied merely upon inferences that might be made from action, or inaction, or both. See id. (declining to presume legislative acquiescence from failure to object to single sentence of rule); State v. Hazelton, 2006 VT 121, ¶¶ 29-32, 181 Vt. 118, 915 A.2d 224 (declining to interpret legislative silence on minor's legal capacity to consent to sexual acts as altering common law that consent by minor is legal impossibility). Finally, even if legislative inaction or lack thereof can be viewed as acquiescence to Therrien, we have held that "[w]hile we have the greatest respect for

15

other unlisted common-law actions.  Reynolds, 2025 VT 34, ¶ 10; Whitcomb, 38 Vt. at 483.  But for Therrien, this cause of action would have ended with the death of the alleged wrongdoer, and without protracted litigation about potential viable substitute parties who apparently had nothing to do with their father's alleged conduct.  As described below, I would set Therrien aside and affirm on grounds that defendant's death extinguished plaintiff's cause of action.

¶ 30.    Vermont's survival statute, 14 V.S.A. § 1453, provides:

> The causes of action mentioned in sections 1451 and 1452 of this title shall survive.  Actions based thereon may be commenced and prosecuted by or against the executor or administrator.  When the actions are commenced in the lifetime of the deceased, after death the same may be prosecuted by or against the executor or administrator where by law that mode of prosecution is authorized.

The listed causes of action include, among others, certain personal injury tort claims.[11]  Id. § 1452.  Actions under the VFHPAA and remedial statutes, such as Act 250 and the Consumer Protection Act, are not listed in the current iteration of the statutes, and they were not listed when Therrien was decided.  14 V.S.A. §§ 1451-1453; Therrien, 161 Vt. at 30, 633 A.2d at 274.

---

stare decisis, and the rule of long-standing legislative acquiescence in the judicial interpretation of statutes, neither can be allowed to prevail when it is determined . . . that an earlier decision is simply wrong."  State v. Begins, 148 Vt. 186, 188, 531 A.2d 595, 596 (1987).

[11]  Section 1451 of Title 14 provides:

> Actions of ejectment or other proper actions to recover the seisin or possession of lands, tenements, or hereditaments, actions of replevin, actions on tort on account of the wrongful conversion of personal estate, and actions on tort on account of a trespass or for damages done to real or personal estate shall survive, in addition to the actions that survive by common law, and may be commenced and prosecuted by the executor or administrator.

Section 1452 provides:

> In an action for the recovery of damages for a bodily hurt or injury, occasioned to the plaintiff by the act or default of the defendant or defendants, if either party dies during the pendency of the action, the action shall survive and may be prosecuted to final judgment by or against the executors or administrators of the deceased party.

¶ 31. "Vermont's survival statutes abrogate the harsh common law rule that personal tort actions die with the person of the plaintiff or the defendant." Whitchurch v. Perry, 137 Vt. 464, 468, 408 A.2d 627, 630 (1979) (citation omitted) (noting § 1453 authorizes executor or administrator of an estate to prosecute cause of action decedent had, or would have had if death had not ensued). Over the years, this Court has recognized that the Legislature chose its words carefully in crafting the statutes and we have been careful to breathe life into each word. In an 1866 case interpreting the predecessor statute, Whitcomb, 38 Vt. 477, the Court explained that by including the word "injury" alongside "bodily hurt," the Legislature "deliberately broadened the scope of damages claims that survived."[12] Reynolds, 2025 VT 34, ¶ 9 (summarizing Whitcomb, 38 Vt. at 482); see also Whitcomb, 38 Vt. at 482 (noting that if Legislature had intended survival to be limited to actions involving claims of actual force or violence that caused physical pain and suffering, it would have simply used phrase "damages for any bodily hurt").

¶ 32. Moreover, since their enactment the better part of two centuries ago, we have construed the survival statutes to accomplish their overall purpose to abrogate the common-law rule. See Whitcomb, 38 Vt. at 482 (holding that statutory language "damages for any bodily hurt or injury" included cause of action for confinement by unlawful imprisonment because confining person's "body in a jail, and restraining him of his liberty" is injury to body and was therefore type of claim that survived under statute); see also Needham v. Grand Trunk Ry. Co., 38 Vt. 294, 300 (1865) (holding that survival statute plainly expressed legislative intent to allow "prosecution of actions and causes of action by as well as against the administrator," and to hold otherwise "would render that part of the section which declares that the cause of action shall survive wholly inoperative, except in cases where the cause of action could be prosecuted against the executor or administrator").

---

[12] For all relevant purposes, the language of the current survival statute is identical to the prior statute. Compare 14 V.S.A. § 1452, with 1862 G.S. ch. 52, §§ 10-11. See Reynolds, 2025 VT 34, ¶ 9 (discussing prior version of statute).

¶ 33.    Recently, in Reynolds v. State, we relied heavily on Whitcomb in holding that a complaint for damages under the VIPA, 13 V.S.A. §§ 5561-5585, survived the death of the plaintiff.  We did not mention, much less rely on or discuss, Therrien or its philosophical underpinnings, in deciding Reynolds.  On the contrary, Reynolds hinged on the text of the survival statutes and Whitcomb's conclusion that a cause of action akin to the VIPA claim fell within their ambit.  We explained that although "[t]he survivorship statutes at 14 V.S.A. §§ 1451-1452 do not explicitly refer to the VIPA or post-conviction relief in general," "they do allow general tort actions for bodily injury to survive the death of the plaintiff."  Reynolds, 2025 VT 34, ¶ 6.  Because the claimant alleged that he was imprisoned for just over eight years after his improper conviction in 2012—during which time, like the plaintiff in Whitcomb, his "body [was] in a jail" and he was "restrain[ed] . . . of his liberty"—we deemed his claim "analogous to a common-law claim for wrongful or false imprisonment, a tort that has long been held to survive the death of the plaintiff because it seeks damages for a form of bodily injury," and allowed the lawsuit to proceed.  Id. ¶¶ 7, 9-10 (observing that, given that "the language of the current statute has not significantly departed from the 1862 statute, our interpretation in Whitcomb controls our understanding of the extent of survivorship in this context").

¶ 34.    Between the bookends of Whitcomb and Reynolds, Therrien is an anomaly.  It held that a state action charging a real-estate developer with violating Act 250 and the Consumer Fraud Act in connection with a residential development survived his death, and that his wife and his estate were properly substituted as parties.  Therrien, 161 Vt. at 32, 633 A.2d at 276.  In reaching these conclusions, the Court first recognized that "[to] meet the requirements of Rule 25," two requirements must be met: the claim must "survive the death of the party and a proper replacement party must be substituted."  Id. at 29, 633 A.2d at 274.  In analyzing these questions, the Court did not anchor its decisions in the text of the survival statutes and our interpretive precedent, as we did thirty-two years later in Reynolds.

¶ 35. As to the first Rule 25 question, whether the cause of action survived the developer's death, Therrien acknowledged that "the survival statutes do not specifically allow for the survival of the actions brought under Act 250 and the Consumer Fraud Act," id. at 30, 633 A.2d at 274, but decided that those causes of action should nonetheless survive against the developer's widow and his estate. The decision placed significance on the fact that "these statutes were adopted in the early nineteenth century," and expressed concern that if the Court followed their language "no claims created by the Legislature in this century would survive, whatever the practical consequences of abatement." Id. at 30, 633 A.2d at 274-75. The Court deemed that result "so unreasonable as to conflict with the basic purposes of Act 250 and the Consumer Fraud Act." Id. at 30, 633 A.2d at 275. The Court further held that—notwithstanding the abatement rule and the specific categories of surviving actions listed in the survival statutes—"unless the Legislature says otherwise, we will presume that it intended that actions pursued under the remedial terms of protective legislation survive the death of the wrongdoer in order to remedy the injustices done." Id. at 32, 633 A.2d at 276.

¶ 36. In announcing this new rule, Therrien cited an American Law Reports annotation and a handful of federal decisions and out-of-state precedent.[13] Whatever persuasive value one assigns to this noncontrolling authority, it should not have superseded the text of the survival statutes and precedents like Whitcomb. See Holton v. Dep't of Emp. & Training, 2005 VT 42,

---

[13] Notably, only two of the cases cited in Therrien involved the death of a defendant, and neither of them seem to squarely support the Therrien outcome. In United States v. $47,409.00 in U.S. Currency, 810 F. Supp. 919, 928 (N.D. Ohio 1993), the court stated that under federal common law, "[w]hether a cause of action survives the death of the alleged wrongdoer hinges upon a determination that the cause is remedial or punitive in nature." In a lengthy opinion, it ultimately concluded that the government's forfeiture case against a defendant abated with the defendant's death because the action was fundamentally penal in nature. Id. at 925. In Johnson v. Hinds County, 524 So. 2d 947, 952 (Miss. 1988), the Mississippi Supreme Court held that a county's action for an injunction against a developer requiring him to comply with a county ordinance survived the developer's death because there was "nothing peculiarly personal" about the injunction. Its reasoning was very sparse, and it did not base its decision on whether the ordinance was remedial.

19

¶ 21, 178 Vt. 147, 878 A.2d 1051 ("Our rules of statutory construction require us to consider the statute as a whole giving effect to a statute's every word, sentence, and clause, when possible."). Whitcomb—which Therrien did not discuss—employed an entirely different analytical framework rooted in the survival statutes to decide the question of survival of an unlisted cause of action. It compared the cause of action before it (unlawful imprisonment) to the statutory list of surviving actions to decide that the former survived even though it was not specifically listed. Whitcomb, 38 Vt. at 482.

¶ 37.    Moreover, our recent decision in Reynolds endorsed and extended the analytical framework of Whitcomb. Reynolds did not rely on Therrien but instead used the Whitcomb approach, comparing the VIPA action to certain causes of action listed in the survival statutes to find that it sufficiently resembled them and survived the plaintiff's death. Reynolds, 2025 VT 34, ¶ 10. Reynolds can therefore be read as a tacit rejection of Therrien's pronouncement of a new law of survival.

¶ 38.    Thus, while we do not and should not overturn precedent lightly, I believe that this constellation of considerations—the decision's failure to reckon with the text of the relevant statutes and its departure from the Court's own approach to interpreting the survival statutes, together with the overlay of Reynolds's return to the text-based approach of Whitcomb—justifies overruling Therrien. See State v. Willard-Freckleton, 2007 VT 67A, ¶ 10, 183 Vt. 26, 949 A.2d 416 ("Though generally bound by the principles of stare decisis to follow past precedent, we are not slavish adherents to this doctrine, and will overrule prior case law when it is determined that an earlier decision is simply wrong." (quotations and citation omitted)).

¶ 39.    Moreover, while it undoubtedly highlighted important questions, Therrien's articulation of certain public policy concerns did not justify the creation of an expansive new rule implicating competing policy concerns and considerations of fairness. The Therrien Court suggested that the survival statutes were too narrowly drafted, and that they were inherently

20

inadequate due to their age. Specifically, it reasoned that if it accepted defendant's argument that the statutes did not specifically allow for the survival of the State's Act 250 and consumer-fraud claims, "no claims created by the Legislature in this century would survive, whatever the practical consequences of abatement." Therrien, 161 Vt. at 30, 633 A.2d at 275. Putting aside the Legislature's prerogative to update its survival and remedial statutes to reflect these concerns, we have interpreted the language of the survival statutes to support survival of modern causes of action when appropriate, a point our decision in Reynolds spotlights. 2025 VT 34, ¶ 10. In other words, through interpretation of the survival statutes that honors their purpose, we have ensured that claims resembling the listed causes of action survive the death of a party, including a claim arising from modern legislation. Id.; Whitcomb, 38 Vt. at 482. Since Therrien was decided, we have not relied on it to hold that other statutory claims survive, so we need not disturb any surviving claims by making a complete return to the interpretive approach prescribed in Whitcomb and Reynolds. Today, we should follow the subtext of Reynolds and explicitly overturn Therrien. We should further hold, consistent with Whitcomb and Reynolds, that questions of survival of causes of action turn on whether they are named in the survival statutes or bear the requisite likeness to the listed causes of action.

¶ 40. I believe this result would also ameliorate the unfairness that is likely to result from further extension of the Therrien rule. The decision recognized the hardship of being added to a lawsuit following a defendant's death but concluded that "the duties imposed on defendant are those she assumed when she became executrix of the estate." Therrien, 161 Vt. at 33, 633 A.2d at 276 (noting that wife executrix, because of her substitution, would need to shoulder "substantial investment" that would be required to correct "defects [her husband] inflicted"). As this case shows, however, continuing to follow Therrien will, in all likelihood, one day expose many other categories of innocent persons to the burden of litigation brought over the alleged sins of a deceased person, including blameless heirs, devisees, and legatees who may not have assumed

executor or administrator duties like the <u>Therrien</u> widow did. That would be the outcome for the children of defendant in this case, had they inherited the rental property directly from their father.

¶ 41. In any event, whether defendant's children were proper substitute parties under Rule 25 is not one I believe this Court needs to reach. I would overturn <u>Therrien</u> and recommit to the nearly two-century-old approach to interpretation of the survival statutes we used as early as <u>Whitcomb</u> and as recently as <u>Reynolds</u>. Under that approach, plaintiff's claim did not survive defendant's death because it was not a cause of action that survived the death of a defendant. I would affirm on grounds that plaintiff's claim ended with the death of defendant.

43. I am authorized to state that Justice Eaton joins this concurrence.


_____
Associate Justice